# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| JOHNNIE P. FUSILIER | : | DOCKET NO. 06-0271 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On December 3, 2003, Johnnie P. Fusilier filed a claim for Supplemental Security Income payments. (Tr. 25, 63-65). He alleged disability since June 20, 2003, due to high blood pressure, residuals from a stroke, obesity, sleep apnea, and back and neck pain. (Tr. 25, 63). The claim was denied at the initial stage of the administrative process. (Tr. 31-35). Accordingly, Fusilier requested and received a September 14, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 318-350). However, by decision dated October 13, 2005, the ALJ denied benefits, finding at Step Four of the sequential evaluation process, that Fusilier was able to return to past

relevant work as a welding fabricator. (Tr. 25-30). Fusilier appealed the adverse decision to the Appeals Council. Yet, on December 9, 2005, the Appeals Council denied his request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6, 8-10).

On February 10, 2006, Fusilier petitioned this court to review the denial of benefits. He alleges the following errors:

    (1)    the ALJ erred in assessing plaintiff's residual functional capacity;

    (2)    the ALJ failed to fully and fairly develop the record; and

    (3)    the ALJ erred in determining that plaintiff could perform past relevant work as a welding fabricator.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary

choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The Commissioner evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Commissioner's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Commissioner to establish that the claimant can perform other work. If the Commissioner meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Steps 1-2**:

The ALJ found at Step Two of the sequential evaluation process that Fusilier suffered from severe impairments of hypertensive cardiovascular disease, obesity, and status post cerebral vascular accident. (Tr. 26, 29). However, the impairments were not severe enough to meet or

3

medically equal any one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*.

The ALJ then determined that plaintiff retained the residual functional capacity for a wide range of work at the medium exertional level. (Tr. 28, 29).[1] Fusilier can occasionally finger, feel, handle, reach, balance, stoop, kneel, crouch, crawl, and push and pull. *Id*. However, he must avoid climbing ropes, ladders, and scaffolds or working around dangerous machinery, deep water, or unprotected heights. *Id*. He should avoid temperature extremes or extreme humidity or

---

[1] Medium work is defined and explained by Social Security Ruling 83-10. It provides:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

wetness. *Id*.

In assessing Fusilier's residual functional capacity, the ALJ principally relied upon the hearing testimony of a non-examining medical expert, Vern Laing, M.D. (Tr. 340-346).[2] Dr. Laing's assessment substantially supports the ALJ's determination. *Id*. Nonetheless, plaintiff raises several challenges.

Plaintiff first argues that the ALJ failed to explain why he followed Dr. Laing's assessment instead of the assessment by another non-examining agency physician, Mark Walker, M.D. (*See*, Tr. 168-175). Yet, the only limitation recognized by Dr. Walker that was more restrictive than Dr. Laing's assessment was a carrying and lifting limitation at the light exertional level. (Tr. 168-175). Of course at the hearing, plaintiff testified that he could lift 50 pounds. (Tr. 330).[3] Thus, any error was harmless. *See generally, Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)(citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)).

Plaintiff next contends that the ALJ failed to consider the combined effects of his impairments, including obesity. However, the ALJ relied on the assessment of Dr. Laing who reviewed plaintiff's medical records and personally observed plaintiff's obesity before rendering his assessment which was adopted by the ALJ.[4]

---

[2] Dr. Laing is board-certified in internal medicine, with a primary specialty in allergy. (Tr. 44).

[3] Plaintiff elaborated that although he could carry 50 pounds, he could not control it. (Tr. 330). By not being able to control the weight, Fusilier explained that he meant that he could not "feel a grip." *Id*. Dr. Laing was present during this testimony, yet he did not assign any additional restrictions on Fusilier's ability to lift or carry stemming from his inability to "feel a grip."

[4] Plaintiff complains that the ALJ erred in failing to adopt Dr. Laing's limitation that plaintiff should not work in any setting where he would be required to not do something that

5

Plaintiff next contends that the ALJ should have consulted plaintiff's treating physicians for clarification and supplementation. The regulations state that the Commissioner will seek additional evidence or clarification from a treating source when: 1) the report from the source contains a conflict or ambiguity that needs to be resolved; 2) the report does not contain all of the necessary information; or 3) does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.912(e). None of the foregoing conditions are present here. The medical expert possessed all necessary information to render an opinion on the limitations imposed by plaintiff's impairments. Moreover, "an ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)).

In any event, to obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996); *see also, Newton v. Apfel*; 209 F.3d 448 (5th Cir. 2000). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted). Fusilier has not made the requisite showing.

In sum, the ALJ's residual functional capacity determination is supported by substantial evidence.

---

would hurt other workers. (*See*, Tr. 342). Yet, it stands to reason that this limitation would be encompassed within plaintiff's need to avoid climbing ropes, ladders, and scaffolds or working around dangerous machinery, deep water, or unprotected heights. *Id.*

**Issue 3**:

At Step Four of the sequential process, the ALJ determined that given plaintiff's residual functional capacity, he could return to his past relevant work as a welding fabricator as the job is generally performed in the national economy. (Tr. 29-30).[5] In reaching his decision, the ALJ relied on the testimony of a vocational expert. (Tr. 346-350).

Citing *Latham v. Shalala*, plaintiff contends that the ALJ failed to adequately compare his residual functional capacity with the physical demands of his previous work. *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994). Unlike *Latham*, the instant ALJ relied on the testimony of a vocational expert to determine that plaintiff retained the residual functional capacity to perform the physical demands of his previous work. Moreover, the vocational expert's opinion was consistent with the Dictionary of Occupational Titles. (Tr. 349). The ALJ is entitled to rely on a vocational expert's expertise. *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir. 1995).[6]

For the foregoing reasons, the undersigned finds that the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.

---

[5] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)(citing, Social Security Ruling 82-61).

[6] "The value of a vocational expert is that [s]he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* (citation omitted).

7

Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on November 21, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE